**W. T. BOWEN, J. M. Lyon, H. L. Johnson and J. W. Parker**

v.

**LOCKHEED–GEORGIA COMPANY, a Division of Lockheed Aircraft Company and Aeronautical Machinists Lodge No. 709, International Association of Machinists, AFL–CIO.**

**Civ. A. No. 12612.**

United States District Court,
N. D. Georgia,
Atlanta Division.
Jan. 9, 1970.

Richard L. Powell, Marietta, Ga., for plaintiffs.

Adair, Goldthwaite, Stanford & Daniel, J. R. Goldthwaite, Jr., Atlanta, Ga., for defendant Lodge No. 709.

Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., for defendant Lockheed.

SIDNEY O. SMITH, Jr., District Judge.

This is a class action by employees of Lockheed-Georgia Company classified as "Tool Planners," who are members of Aeronautical Machinists Lodge No. 709, International Association of Machinists, AFL–CIO against the company and the union. Plaintiffs ask the Court to enjoin implementation of a decision settling the grievances of eight "Tool Process Men." The settlement allowed the eight, also members of Lodge No. 709, to make a lateral transfer to the "Tool Planner" job classification on terms and conditions plaintiffs find objectionable. Plaintiffs argue that transfer of these men under such terms and conditions is prohibited by the governing collective bargaining agreement, and that therefore the settlement of the eight grievances breached the agreement. Jurisdiction is accordingly predicated on Section 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185.

In April, 1969, the Union filed a motion to dismiss for failure to state a claim upon which relief can be granted. The motion was supported by three arguments: first, plaintiffs had no standing because only the eight most junior members of the "Tool Planners" classification could have sustained any injury at all from defendants' action; second, plaintiffs had failed to exhaust the contractual remedies of grievance and arbitration; third, plaintiffs failed to show any *present* injury, because only the eight most junior Tool Planners could sustain any injury, and for any such alleged injury, they had an adequate remedy under the contract.

Simultaneously, Lockheed filed its motion to dismiss for failure to state a claim upon which relief can be granted. The Company argued that the conduct alleged did not violate the collective bargaining agreement, that plaintiffs had failed to exhaust their contractual reme-

dies, and that plaintiffs had an adequate remedy at law, *i.e.*, money damages, and had not shown any irreparable injury entitling them to injunctive relief.

After an informal hearing, the Court remanded the cause for plaintiffs to pursue *their* claims through the grievance procedure. Order of May 9, 1969. However, jurisdiction was retained, in the event that exhaustion of the contract remedies did not result in agreement between the parties. Plaintiffs' grievances were not taken to arbitration. At Step 3 of the grievance procedure, *Agreement* Part B, Art. III, Sec. 1, the Labor Relations Committee denied the action requested by each grievance. Report of Developments in the Processing of Grievances Filed by Plaintiffs, p. 2. Presumably, a majority of the Union representatives and a majority of the Company representatives on the Committee concurred in the result. It follows that the Committee's decision is considered "final" by both Lockheed and the Union, *Agreement* Part B, Art. III, Sec. 4. The Union has refused to take the grievances to arbitration. Proceedings of September 12, 1969, T–14, 15. Counsel for all parties have stated that there is no further contention that the contract remedies have not been exhausted. Proceedings of September 12, 1969, T–22. Thus the controversies between the parties are presented in a different posture than they were before remand, and than were the merits of the claims made in Glover v. St. Louis-San Francisco R. Co., 393 U. S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), Vaca v. Sipes, 386 U. S. 171, 87 S.Ct. 903, 17 L. Ed.2d 842 (1967), and Republic Steel Corp. v. Maddox, 379 U. S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). It follows that the motions to dismiss for failure to exhaust are moot.

Just before the hearing on September 12, 1969, the Union submitted a supplemental brief supporting its motion to dismiss arguing that since plaintiffs have availed themselves of the grievance machinery, the only questions remaining for the Court are whether the settlement of the original grievances of the eight "Tool Process Men" constituted a breach of the collective bargaining agreement, or was otherwise the product of a breach of the duty of fair representation the Union owes plaintiffs. The Union, of course, argues that there was no breach of either the contract, or of its own duty of fair representation.

At the hearing of September 12, 1969, the eight former Tool Process Men were granted leave to intervene. Proceedings of September 12, 1969, T–53, 55. They have submitted a brief opposing the injunction, supported by affidavits. Plaintiffs, the Union, and the Company have now submitted motions for summary judgment. Defendants' motions request that their prior motions to dismiss be treated as motions for summary judgment. In its brief supporting its motion for summary judgment, Lockheed takes the same view of what the issues are as did the Union in its Supplemental Brief. However, plaintiffs' brief raises the question whether the Union fairly represented plaintiffs in processing *their* grievances while this suit was pending. In spite of the Union's argument that the quality of its representation of plaintiffs in processing their grievances is irrelevant, the Court feels this question is appropriately raised. Accordingly, there are three issues at bar: (1) whether the Union's processing of *plaintiffs* grievances breached its duty of fair representation; (2) whether the Union's conduct in bringing about the settlement of the original grievances of the eight "Tool Process Men" constituted a breach of the duty of fair representation owed plaintiffs; (3) if so, whether the settlement itself breaches the collective bargaining agreement. Resolution of these issues will be governed by principles applicable to Federal Rules of Civil Procedure 56. In connection therewith, the Court has considered the affidavits of T. D. Roberts, H. K. Gammon, C. M. Crabtree and R. E. Rutledge. Additionally, the deposition of Theodore D. Roberts taken on July 23, 1968, was reviewed. Plaintiffs have not

argued nor does it appear that they were refused the right to negotiate their grievances individually with Lockheed.

A union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion: such conduct breaches the statutory bargaining agent's duty of fair representation. Vaca v. Sipes, 386 U. S. 171, 191, 87 S. Ct. 903, 17 L.Ed.2d 842 (1967). In cases involving a union's failure to carry a grievance to arbitration, it is now well recognized, however, that the bargaining representative must be free to sift out, on reasonable, non-discriminatory grounds, grievances which are without merit. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Acuff v. United Papermakers and Paperworkers, AFL–CIO, 404 F.2d 169 (5th Cir. 1968), cert. den. 394 U.S. 987, 89 S.Ct. 1466, 22 L.Ed.2d 762 (1969); Local Union No. 12, United Rubber, C., L. & P. Wkrs. of America, A.F.L.–C.I.O. v. NLRB, 368 F.2d 12 (5th Cir. 1966), cert. den. 389 U.S. 837, 88 S.Ct. 53, 19 L.Ed.2d 99 (1967), reh. den. 389 U.S. 1060, 88 S.Ct. 762, 19 L.Ed.2d 866 (1968). In Watson v. International Bhd. of Teamsters, C. W. & H., 399 F.2d 875 (5th Cir. 1968), a group of "casual" employees alleged that their statutory bargaining agent breached its duty of fair representation in failing to represent them fairly and adequately in processing grievances whereby they demanded to be made "regular" employees. The Court held that less than enthusiastic representation in the grievance procedure did not breach the union's duty of fair representation, and was understandable in view of the fact that the union had procured and negotiated the side agreement regarding "casual" employees which was being attacked by the grievances. *Id.* at 880. Finally, it is also well recognized that there is no breach of the duty of fair representation where a union *in good faith* takes a position contrary to that of some individuals whom it represents, or supports the position of one group of members against that of another, or agrees to action having adverse repercussions on a particular group of its members. Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L. Ed.2d 370 (1964); Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).

(1)

The only evidence plaintiffs offer to show that the Union breached its duty of fair representation in processing plaintiffs' grievances is the deposition of Theodore D. Roberts, Assistant Union Relations Manager at Lockheed Georgia Company. Viewing the deposition in a light most favorable to plaintiffs, it shows that in considering plaintiffs' grievances,

(a) at no time were the merits of the original settlement of the eight Tool Process Men's grievances reconsidered (*Deposition* pp. 46, 47);

(b) it was merely assumed that the prior settlement was reached in good faith by the Company and Union representatives (*Deposition* p. 39);

(c) the Company and Union representatives processing plaintiffs' grievances did not make an independent determination whether the representatives who settled the grievances of the eight Tool Process Men had acted within the scope of their authority under the collective bargaining agreement (*Deposition* p. 51).

Although regarding (a) and (c) above there is conflicting testimony from Mr. Roberts (*Deposition* pp. 45 and 47, respectively), in each instance the Court has drawn the inference most strongly supporting plaintiffs' position that the Union's conduct in processing plaintiffs' grievances breached its duty of fair representation.

The failure to review the merits of the previous grievance settlement is not a breach of the duty of fair representation. The Court is unwilling to hold that any employee adversely affected by resolution of a grievance may have the settlement completely re-negotiated by filing a grievance of his own. Cer-

tainly the bargaining agent has discretion to weed out such grievances as unmeritorious. *See* Vaca v. Sipes, 386 U. S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Acuff v. United Papermakers and Paperworkers, AFL–CIO, 404 F.2d 169 (5th Cir. 1968), *supra*; Local Union No. 12, United Rubber, C., L. & P. Wkrs. v. NLRB, 368 F.2d 12 (5th Cir. 1966) *supra*. Moreover, since plaintiffs' grievances did not challenge the good faith of the Union's settlement of the grievances of the eight Tool Process Men, the Company and the Union were entitled during the later proceedings to assume that the earlier settlement was reached in good faith. Finally, any failure of the Company and Union representatives who processed plaintiffs' grievances to make an independent determination whether the representatives who settled the grievances of the eight Tool Process Men had acted within the scope of their authority under the collective bargaining agreement was a justified exercise of the discretion of the collective bargaining agent to screen grievances which are without merit. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Acuff v. United Papermakers and Paperworkers, AFL–CIO, 404 F.2d 169 (5th Cir. 1968), *supra*; Local Union No. 12, United Rubber, C., L. & P. Wkrs. v. NLRB, 368 F. 2d 12 (5th Cir. 1966), *supra*. That plaintiffs' grievances and claims are without merit will appear below, in Section 3 of this Order.

### (2)

■ In support of their motions for summary judgment, defendants have submitted affidavits from men who participated in the processing and settlement of the grievances of the eight Tool Process Men. The Affidavit of H. K. Gammon, Vice President of Aeronautical Machinists Lodge 709 relates how the settlement was reached, and states that the considerations which led the Union to press for the settlement of these grievances were the seniority and qualifications of the eight grievants. Affi-

davit of H. K. Gammon, pp. 5–7. Mr. R. E. Rutledge, Labor Relations Representative at Lockheed-Georgia Company, indicated that the Union indeed proceeded substantially on the basis that the eight grievants were qualified, and stated that neither he nor to his knowledge any other Lockheed representative have any knowledge of facts which indicate that the Union pressed for the settlement in bad faith, or out of hostile discrimination against these plaintiffs. *See* Affidavit of R. E. Rutledge, pp. 4–6. These affidavits can, and do pierce the verified allegations of the complaint that the Union and Company conspired against plaintiffs, and in bad faith failed to represent plaintiffs' interests in doing so (Complaint Paragraphs 16–18, 21). 6 Moore's Federal Practice ¶ 56.11[3], pp. 2161–2177 (2d Ed. 1968). The record simply does not support plaintiffs' contention that the Union's conduct in negotiating the settlement of the grievances of the eight Tool Process Men breached the duty of fair representation owed plaintiffs. Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L. Ed. 1048 (1953).

### (3)

Defendants urge that Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) be read broadly to imply that an individual employee who has unsuccessfully exhausted exclusive remedies under the collective bargaining agreement nevertheless may not bring a civil action under Section 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185 unless he can show that the conduct of his employer amounted to a repudiation of the contractual remedies, or that the conduct of his union constituted a breach of the duty of fair representation. If Vaca v. Sipes is to be read in such fashion, the Court need go no further in view of its holdings above.

The holding of Vaca v. Sipes, *supra*, is that because contractual remedies are devised and controlled by the employer

and the union, they may often prove unsatisfactory or unworkable for an aggrieved employee. "The problem then is to determine under what circumstances the individual employee may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures." 386 U.S. at 184–185, 87 S.Ct. at 914. The Supreme Court specified only two situations in which an employee should not be limited to the exclusive contractual remedies. (1) Where the employer's conduct amounts to a repudiation of the grievance procedure, or (2) where having sole power to invoke the grievance procedure the union wrongfully refuses, in breach of its duty of fair representation, an aggrieved employee need not first resort to the exclusive contractual remedies before bringing a Section 301 action for breach of contract. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

More recently, in Glover v. St. Louis-San Francisco R. Co., 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), the Supreme Court described a third situation in which an aggrieved employee can bring a civil action without first exhausting or attempting to exhaust his contractual remedies. Where an employee is alleging racial discrimination against his union or company, he need not first invoke a remedy "administered by the union, by the company, or both, to pass on claims by the very employees whose rights they have been charged with neglecting and betraying." *Id.* at 330, 89 S.Ct. at 552.

Unquestionably, grievance procedures and arbitration are intended to be exclusive remedies under the collective bargaining agreement before the Court. At Step 3 of the grievance procedure, the decision reached by the Labor Relations Committee is "final" if a majority of the Union representatives and a majority of the Company representatives on the Committee concur in it. Part B, Art. III, Sec. 4. Furthermore, where a grievance is taken to arbitration, the decision of the arbitrator is "final and binding" on both Company and Union. Part B, Art. III, Sec. 5.

The instant case does not involve repudiation of the grievance procedure by Lockheed. Neither has the Union wrongfully refused to invoke the grievance procedure, or otherwise breached its duty of fair representation. There are no allegations of racial discrimination.

In view of the above findings to the effect that the Union's settlement of the original grievances of the eight Tool Process Men and its processing of plaintiffs' grievances were both in good faith —without any breach of the duty of fair representation—it follows that the Court may not reach the question whether the original settlement breaches the collective bargaining agreement. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L. Ed.2d 842 (1967). Accordingly, defendants' motion for summary judgment must be, and hereby is, granted.

It is so ordered.